(Decided 5th January, 1887.)

---

THE BALTIMORE AND LIBERTY TURNPIKE COMPANY
*vs.* JOSEPH A. CASSELL.

*Turnpike Companies—Negligence—Evidence—Opinions of Witnesses—Rule for Ascertaining Damages—Proximate consequence of Injury—Contributory negligence—Medical Expert—Hypothetical question—Instructions to the Jury.*

When corporations are established and empowered by the Legislature to construct or improve turnpikes and other public works of a similar nature, they are under a legal obligation to have the work done with due regard for the safety of individuals, and will be held liable for damages resulting from the non-performance of this duty.

The taking of toll from travellers as a compensation for the use of the road, creates an obligation to maintain every part of the road in a safe condition.

In an action against a turnpike company for damages sustained by the plaintiff in consequence of a coach he was driving along the defendants' road, being overturned and thrown down a declivity by the side of the road, it was HELD:

1st. That a witness who said he was well acquainted with the road, and described its condition from his own observation, might be asked, whether in his opinion, and from what he saw of the road, it was safe to travel at that point by wagons or carriages.

2nd. That in answering such question, the witness would not be occupying the position of an expert.

3rd. That the plaintiff having offered evidence tending to show that he was injured by the coach he was driving being thrown over the declivity, a witness, though not a medical expert, might then be asked to state what the plaintiff's physical condition and appearance of health were, and continued to be, after the accident.

4th. That evidence showing that after the accident the plaintiff was not able to walk; that he was carried home; that bloody discharges were observed the next morning which had not ceased at the time of the trial, presented facts from which the jury, if they believed the evidence, might infer that the abnormal condition of the plaintiff was caused by his fall over the declivity.

5th. That upon this evidence, it was not erroneous to instruct the jury, that if they found for the plaintiff, in estimating the damages they were to consider the physical condition of the plaintiff anterior to the injury, as compared with his then condition.

6th. That the jury were properly instructed, that if they believed the plaintiff's internal trouble was the natural and proximate consequence of the injury sustained by the defendants' negligence, then they were to consider the same in awarding damages, even if they believed that at the time of the accident the plaintiff had a tendency or predisposition to the disease or trouble from which he was suffering.

7th. That prayers instructing the jury that even if the defendant was negligent, yet if the plaintiff was driving a fractious horse, or was unable to control his horses because of a weakness of the arm, caused by a bone felon or by any physical disability of a similar nature, he was not entitled to recover, were erroneous as tending to mislead the jury in regard to the law as applied to a case of contributory negligence.

8th. That a continuance of bloody discharges by the plaintiff, was an important fact pertinent to the issue, and a physician who said he had recently examined the plaintiff, was a proper person to prove that fact.

Although a physician, as a medical expert, cannot give his opinion upon the case on trial, because the facts of the case remain to be found by the jury, he may be asked his opinion upon a similar case hypothetically stated.

It is not error to reject a prayer which is covered by the Court's own instructions to the jury.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court. Twenty-two exceptions were taken. Exceptions from one to *twenty-one inclusive,* other than the *fourth, sixth, eighth, twelfth, fifteenth, sixteenth* and *nineteenth,* which were abandoned, are sufficiently stated in the opionion of the Court.

*Twenty-second Exception.* The plaintiff offered the following prayer :

If the jury shall find a verdict for the plaintiff, in estimating damages they are to consider the health and condition of the plaintiff before the injury complained of, as compared with his present condition in consequence of said injury, if they find it to be such consequence, and whether said injury is in its nature permanent; and if the jury further believe that the plaintiff's internal trouble, giving rise to the loss of blood, is the natural and proximate consequence of the injury sustained by the defendant's negligence, then they are entitled to consider the same in awarding damages, even if they believe that at the time of the accident the plaintiff had a tendency or predisposition to the disease or trouble from which he now suffers.

The defendant offered the ten prayers following :

1. If the jury find from the evidence that on or about the sixth of November, 1884, on a dark night, the plaintiff was the driver of an omnibus on the turnpike of the defendant, for the owner, Mr. Jean, and that on that date as he was driving at a point about thirteeen miles from

Baltimore, one of the horses in said coach took fright at the reflection of the light from the lamp in the omnibus against the bank on the left hand side of said turnpike, in going from the city, and laid against the tongue of said omnibus, and carried the same towards the right side of said road to a point about twenty-five feet from where the horses first shied, and that the plaintiff, although he tried, was unable to compel the horses to turn at the bend of the road, and the horses and omnibus went over a bank on that side of the road, carrying down several posts that had been planted at that point by the company, and that plaintiff jumped, or was thrown from his place on the top of the omnibus; and also find that the plaintiff knew that said horse was in the habit of shying at objects on the side of the road, then the plaintiff is not entitled to recover, although the jury believe that the defendant did not use ordinary care in the construction of the road at that point.

2. If the jury believe from the evidence that the plaintiff drove an omnibus, as shown by the evidence in the case, and that on the night of the sixth of November, 1884, being a very dark night, as he was driving on the turnpike of the defendant at a point where the road bends to the south, about thirteen miles from Baltimore; and shall also find, that at the time the plaintiff was driving in the omnibus a horse which was in the habit of shying, which habit was known to the plaintiff, and that the horse shied at the reflection of the omnibus lantern upon the side of the bank, and laying against the tongue of the omnibus, he pushed the other horse and the omnibus toward the other side of the said road by reason of the inability of the plaintiff to control the said horse in consequence of the weakness of his arm, caused by having had a bone felon, the horse and omnibus went over the bank on the opposite side of the road, and the plaintiff either jumped or was thrown from his seat on the omnibus, then

the plaintiff was guilty of contributory negligence, and cannot recover in this case, although the jury may find that the road of the defendant was not sufficiently guarded.

3. That there is no evidence in this case that the passing of bloody urine by the plaintiff, was caused by any injury received from an accident which happened to the omnibus whilst being driven by the plaintiff upon the turnpike of the defendant, as shown by the evidence in this cause.

4. That the testimony of all the witnesses in relation to the condition of health of the plaintiff, before and after the accident, and the testimony of the plaintiff, Cassell, in relation to his condition of health, both before and after the accident, be and the same is hereby excluded from the consideration of the jury, there being no evidence to show that such condition was caused by the accident to the omnibus, which was driven by the plaintiff, on or about the night of the sixth of November, 1884.

5. That there is no evidence in this case sufficient to show that the plaintiff received any injury from an accident which occurred to the omnibus, driven by him on the road of the defendant, on or about the sixth of November, 1884, and by which he was thrown or jumped to the ground.

6. That the hypothetical question put to Doctor Cordell, and the whole evidence of said Cordell, be and the same is hereby excluded from the consideration of the jury.

7. That if the jury believe from the evidence that the accident, referred to in the evidence in this case, was caused by the scare and fright of one of the horses, which was being driven in the omnibus at that time, and the inability of the plaintiff to control the said horse, then the defendant is not responsible for the consequences of said accident, although they may find that the road was defective at the point of the accident.

8. That the plaintiff cannot recover in this case if the jury believe from the evidence that any want of ordinary care on his part contributed to the causing of the accident, as testified to in the case.

9. If the jury shall believe that the road of the defendant, at the point where the accident in this case is alleged to have occurred, was metaled or stoned, to the width of sixteen feet six inches, and that with a side road at the width of twenty-three feet, and that the travelled part of said road was, at the time of the accident, in good condition, and there was sufficient width between the point where the bank started towards the ravine on the right hand side of said road, and the bank on the south side of said road; and shall also find that the plaintiff, in driving on said road an omnibus with two horses in it, and that at a point on the road of the defendant, about thirteen miles from Baltimore, on a dark night, one of said horses became frightened at the reflection of the lamp on the omnibus upon the bank on the left hand side of said road, and pushed the tongue of the vehicle towards said ravine, and that the plaintiff was unable to restrain the said horse, and in consequence thereof the said vehicle and horses went outside of the travelled limits of the said road and over the said bank; and shall further find that the defendant had planted posts along the side of said bank to prevent persons from driving over it, and that the same were from fifteen inches to two feet in the ground; and shall further find that by reason of the speed at which the horses were going and the weight of the omnibus, the posts were knocked down and the horses and omnibus went over the bank, then the defendant is not responsible in this case, although the jury may believe that the plaintiff was injured.

10. That the testimony of the witness, Doctor Cordell, be and the same is hereby excluded from the consideration of the jury.

The Court (PHELPS, J.) granted the prayer of the plaintiff, and refused all the prayers of the defendant, and gave an instruction of its own, as follows :

If the jury find from the evidence that the injury complained of was occasioned by the defective, improper and dangerously unsound condition of the defendant's road, and but for such condition would not have occurred, and that such condition was known, or might, by the exercise of ordinary diligence, have become known to the defendant a sufficient time before the accident to have prevented the same, and might have been prevented by the exercise of ordinary care on the part of the defendant, then the plaintiff is entitled to recover, unless the jury shall also find that the plaintiff's own negligence contributed in any degree to cause his misfortune, that is to say, unless the jury shall find :

1st. That he was driving a horse not ordinarily gentle and well broken, and that the accident would not have occurred had the horse answered to that description.

2nd. Or that he was driving with one hand, so disabled from a previous ailment as to interfere with the proper management of his team, and that the accident would not have occurred had the plaintiff had ordinary use of himself in that particular.

3rd. Or, that the plaintiff was wanting upon the occasion in question in that degree of attention, circumspection, skill and care to avoid accident, which ordinary, careful and competent drivers habitually employ, or might reasonably be expected to employ, in similar circumstances.

The defendant excepted. The jury rendered a verdict for the plaintiff for $3500, and judgment was entered thereon. The defendant appealed.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, and BRYAN, J.

---

Baltimore & Liberty Turnpike Co. *vs.* Cassell.

---

*Samuel Snowden,* for the appellant.

The injury to the appellee was not produced by the negligence of the defendant, but was caused by the fright of the horse which caused him to become unmanageable, freeing himself from the control of the driver and carrying both the other horse and the coach over the bank. This was the proximate cause of the accident. *Spaulding vs. Winslow,* 74 *Me.,* 533; *Titus vs. Northbridge,* 97 *Mass.* 258; *Horton vs. City of Taunton,* 97 *Mass.,* 266 *n.; Wharton on Neg., sec.* 103; *Wright vs. Templeton,* 132 *Mass.,* 52; *Davis vs. Dudley,* 4 *Allen,* 557. An instance of fright and defect combined. *Cushing vs. Bedford,* 125 *Mass.,* 526.

It was the inability of the driver from whatever cause it proceeded, to control the horse, that produced the accident. Between the shying at the bank and the bend at which the coach went over, there intervened the unmanageableness of the horse, which was the actual cause of the accident; and the failure of the defendant to put in posts sufficiently strong to sustain the shock of two runaway horses, attached to an omnibus, was therefore too remote to be the proximate cause of the accident. *Insurance Co. vs. Tweed,* 7 *Wall.,* 44; *Gault vs. Harris,* 20 *Md.,* 297; *Scheffer vs. Washington, &c., R. R. Co.,* 105 *U. S.,* 249; *Annapolis & Elkridge R. R. Co. vs. Gantt,* 39 *Md.,* 115; *Phil., Wilm. & Balto. R. R. Co. vs. Constable,* 39 *Md.,* 149.

If the horse had only shied and striking against a defect in the highway, had run away, or if the carriage had broken down, because of a defect in the highway, then the defect in the highway being the primary cause of the accident, the defendant would have been liable. *Balto. & Y. Turnpike Road vs. Crowther,* 63 *Md.,* 558.

The unmanageableness of the horse directly produced the accident, and was therefore the proximate cause of the alleged injury. *Balto. & Ohio R. R. Co. vs. State, use of Trainor, et al.,* 33 *Md.,* 542.

The company was bound to have a road of sufficient width for the usual travel upon it, and to keep it in proper repair. It was not bound to provide for horses that would run away, but only for such as might shy, and of which the driver might momentarily lose control. If the horse was in the habit of getting frightened, and then to run away, the owner was to blame for going upon the road with such a horse; and if the horse was not accustomed to take fright, then we might infer that his fright, at the time of the accident, was extraordinary and exceptional; and such is a cause against which the road company is not required to guard. *Wharton on Neg., sec.* 103, *and authorities there cited.*

There was no evidence from which the jury could find that there was any casual connection between the alleged negligence of the defendant and the injury to the plaintiff. It is admitted that damages recoverable in actions for personal injuries are for all the legal and natural consequences resulting from the wrongful act, though the particular form and nature of the results were not contemplated or foreseen by the wrong-doer. *Hussey vs. Ryan,* 64 *Md.,* 436; *Balt. City Pass. R. Co. vs. Kemp,* 61 *Md.,* 88.

When the injury results from a breach of duty, the injury must be shown to be the consequence of such neglect of duty. *State, &c. vs. Balto. & Potomac R. R.,* 58 *Md.,* 484.

The plaintiff must, however, show not only that he has sustained an injury, and that the defendant has committed a tort, but that the damage is the clear and necessary consequence of the tort, and that it can be clearly defined and ascertained. 1 *Suth. on Dam.,* 51; *Lamb vs. Stone,* 11 *Pick.,* 527, 534.

The casual connection between the injury and the alleged negligence is a question for the jury, from all the facts in the case. *Balt. City Pass. Ry. vs. Kemp,* 61 *Md.,* 617.

In cases in which the plaintiff has been allowed to recover, there has always been a visible and certain connection between the act of negligence and the injury. *Barnard's Case*, 60 *Md.*, 555; *Balto. City Pass. R. Co. vs. Kemp*, 61 *Md.*, 617.

The fact that the bloody water or sickly looks were caused by the negligence of the defendant, was left entirely to conjecture. The jury had absolutely no guide. There was no proof to show that he suffered any injury from the act of the defendant, and whether it did or not, depends upon unknown contingencies, and can be nothing more than a mere conjecture. *Wellington vs. Small*, 3 *Cush.*, 145.

As there was no evidence of the connection between the act of negligence and the injury, the jury were only allowed to indulge in conjecture or irrational speculation as to conclusions of fact, which this Court has said should not be allowed, for otherwise there would be no certainty attained, and often the greatest injustice would be inflicted in the trial by jury. *State vs. Malster*, 57 *Md.*, 287, 309; *State, use of Foy, et al. vs. Phil., Wilm. & Balto. R. R. Co.*, 47 *Md.*, 87.

The issue was to be found by the jury from such facts as might be proved in the case, from which the jury might form their own opinions. The plaintiff sought to obtain the opinion of the witness in relation to the very matter in issue, by putting to him hypothetical questions containing facts not then in proof in the case. There was no previous foundation for such a question, and it therefore did not constitute knowledge, but was the mere unsupported opinions of the witness, which were not admissible. *Stewart vs. Redditt*, 3 *Md.*, 79; *Scaggs vs. Balto. &c. R. R. Co.*, 10 *Md.*, 270, 281; *Brooke vs. Townshend*, 2 *Gill*, 10.

The jury were as competent to form conclusions as the witness was, and therefore the opinion of the witness was

inadmissible. *Hardy vs. Ches. Bank*, 51 *Md.*, 599 ; *Milwaukee, &c. Railway Co. vs. Kellogg*, 94 *U. S.*, 469.

The question of ordinary care was for the determination of the jury upon all the facts in the case, and it was error, therefore, for the Court to determine what would be want of ordinary care upon the part of the plaintiff. There were other facts in the case which the jury might have considered, which, under the eighth prayer offered by the defendant, would have been in their power to have considered, but from which they were excluded by the Court's instruction. *Balto. & Ohio R. R. Co. vs. Mali*, *supra, page* 53.

*Joseph C. France*, and *Fielder C. Slingluff*, for the appellee.

Yellott, J., delivered the opinion of the Court.

A suit for the recovery of damages was instituted in the Court of Common Pleas of Baltimore City, by the appellee against the appellant; and from the judgment rendered in that cause, this appeal has been taken. As shown by the record the appellant, a body corporate, owns a turnpike road and is authorized by its charter to exact and receive the payment of toll for travel over said road. On the night of the sixth of November, 1885, the appellee, while driving a coach, was injured by the vehicle being overturned and thrown down a declivity on the side of this road. The plaintiff averred in his declaration, and offered evidence tending to prove that the accident resulted from the neglect of the defendant to keep the road in a safe condition for travel. The defendant adduced proof for the purpose of showing that there was no negligence on its part, and that the proximate cause of the injury was to be found in the fact that the plaintiff was driving a pair of horses, one of which was young and refractory, and that this animal became fright-

ened and forced the coach over the declivity. There was much conflict of testimony, but the jury, enlightened by the instructions of the Court, found for the plaintiff.

In this record are twenty-two bills of exception; twenty-one of which are in relation to the admissibility of evidence; while the remaining exception applies to the ruling of the Court, rejecting the prayers of the defendant and granting a prayer offered by the plaintiff, and also giving instructions of its own.

The appellant has abandoned its fourth, sixth, eighth, twelfth, fifteenth, sixteenth and nineteenth exceptions on the ground that the legal propositions which they present cannot be maintained in view of the decision of this Court in *Baltimore and Yorktown Turnpike Road vs. Crowther*, 63 *Md.*, 558. The questions presented by the exceptions still relied on must now be considered and determined.

The established rule is that, when corporations are authorized and empowered by legislative enactments to construct or improve turnpikes and other public works of a similar nature, they are under a legal obligation to have the work done with due regard for the safety of individuals, and will be held liable in an action for damages, resulting from the non-performance of this duty. The taking of toll from travellers as compensation for the use of the road creates an obligation to maintain every part of said road in a safe condition. *Nicholl vs. Allen*, 1 *Best & Smith*, 932; *Balt. & Yorktown Turnpike Co. vs. Crowther*, 63 *Md.*, 566; *Ireland vs. Oswego Plankroad Co.*, 13 *N. Y.*, 526; *Brookville, &c., Turnp. Co. vs. Pumphrey*, 59 *Ind.*, 78.

The first bill of exception, which has not been abandoned, was taken to the admission of the testimony of a witness who said he was well acquainted with the road, and described its condition from his own observation. He was then asked: "Please state whether or not in your opinion, from what you saw of the road, it was safe to travel at that point by wagons or carriages?" It was

contended that this was an attempt to place the witness in the position of an expert. But this objection does not rest on any substantial basis. Experts are persons who have technical and peculiar knowledge in relation to matters with which the mass of mankind are supposed not to be acquainted. Thus a vessel is intended to be navigated by one having nautical experience, and cars on a railroad are under the management of those who are supposed to have acquired knowledge and skill in the control of trains. It is manifest that mere passengers cannot be experts in relation to these modes of locomotion, although they may testify to the existence of facts coming within their observation. But macadamized roads are constructed for all persons to ride and drive over, and the most timid traveller does not deem it necessary to carry an expert in his carriage to designate the dangerous places. Even animals will sometimes notice such places and avoid them; and any human being who has the use of his organs of vision, and is possessed of an intellect above the grade of idiocy can tell when a particular place in a road is dangerous or otherwise, and is therefore competent to testify as to its condition; the value of his testimony being for the consideration of the jury. In *Crowther's Case*, 63 *Md.*, 568, this Court said: "Whether this bank or declivity rendered the road unsafe for travel was a matter about which men of ordinary intelligence could speak as well as experts in road-making, and the testimony of such witnesses is often resorted to in such cases."

What has been said on this subject is also applicable to the defendant's thirteenth, eighteenth and twentieth bills of exception, which present substantially the same legal propositions. There is no perceptible error in any of the rulings of the Court below in relation to the admissibility of the evidence to which these exceptions apply.

Testimony was offered by the plaintiff tending to show that he was injured by the coach having been thrown

over the declivity, and the witness was then asked to state what his physical condition and appearance of health were after the accident and continued to be. These were facts pertinent to the issue, and it was necessary that the jury should have the information thus sought for in order that they might ascertain the extent of the injury so as to determine on the amount of damages which it would be proper to award. The testimony could only have been objected to on the ground that the witness was not a medical expert. It is true that medical experts may be the only witnesses competent to give the diagnosis of a disease, to testify in regard to its proper treatment *secundum artem*, and to express an opinion as to its probable duration, effects and final termination. But if ordinary individuals could not judge of a person's health from his appearance and symptoms, it would be impossible to know when it was necessary to call in a physician. If a man received a blow from a heavy bludgeon on his lower limbs, certainly an unlearned person, who observed the occurrence, could testify that after the infliction of the blow his appearance was that of a crippled man, but not before. The testimony shows that the plaintiff was thrown down a declivity and after the accident could not walk, but was carried home, and certainly any one who then saw him was competent to say whether his appearance was that of a disabled man or one in a sound condition of health. The learned Judge in the Court below therefore committed no error in admitting the testimony. What is here said disposes of all the remaining exceptions exclusive of the twenty-second, which relates to the ruling of the Court in granting or refusing the instructions sought to be obtained.

The prayer of the plaintiff was granted, and the Court, rejecting all the prayers of the defendant, gave its own instructions containing a clear, concise and proper exposition of the legal principles applicable to the facts forming the foundation for the verdict of the jury.

In the prayer of the plaintiff the jury are told that, if they find for the plaintiff, in estimating the damages they are to consider the physical condition of the plaintiff anterior to the injury as "compared to his present condition," and this prayer is specially excepted to on the ground that "there is no legally sufficient evidence that the plaintiff's internal trouble, giving rise to the loss of blood, is the natural proximate consequence of an injury sustained by the defendant's negligence." The evidence shows that after the accident the plaintiff was unable to walk; that he was carried home; that the bloody discharges were observed next morning and have not yet ceased; and surely from these facts a jury might, if they believed the evidence, infer that the abnormal condition of the plaintiff was caused by his fall over the declivity as described by the witnesses. This prayer, which gives the rule for the ascertainment of damages, is in consonance with what has been settled by adjudication, and there was no error in granting it. *City Pass. R. W. Co. vs. Kemp,* 61 *Md.,* 75 ; *Woodbury vs. Dist. of Columbia,* 3 *Central Reporter,* 788 ; *Ballou vs. Forwood,* 11 *Allen,* 73.

The first and second prayers of the defendant, as well as its seventh and ninth could not be granted. Each of these prayers, when analyzed, presents the proposition that even if the defendant was negligent, yet if the plaintiff was driving a fractious horse, or was unable to control his horses because of a weakness of the arm, caused by a bone felon or by any physical disability of a similar nature, he was not entitled to recover. These prayers were properly rejected for the reason that they tended to mislead the jury in regard to the law as applied to a case of contributory negligence.

The third, fourth and fifth prayers of the defendant relate solely to the exclusion of evidence, and are not properly drawn, as they leave nothing for the finding of the

jury. They simply reproduce questions which had already been passed upon by the Court below on objection to the evidence when offered, and have been disposed of by what has been said in considering the questions raised by exceptions to that evidence. The sixth and tenth prayers relate to the testimony of a physician examined at the trial, and who said that he had recently seen the plaintiff, and testified in relation to the continuance of the bloody discharges, and also answered a question relative to a case supposed to be similar to the one then on trial. These two prayers ask the Court to exclude the whole of this testimony. Most certainly the continuance of the bloody discharges was an important fact pertinent to the issue, and the physician, who said he had examined the plaintiff, was a very proper person to prove that fact. In regard to the question relating to the supposed case, it must be recollected that the physician was a medical expert, and this Court decided in the case of the *Baltimore & Ohio R. R. Co. vs. Thompson*, 10 *Md.*, 84, that although "if the facts are doubtful, and remain to be found by the jury, an expert, who has heard the evidence, cannot give his opinion upon the case on trial, he may be asked his opinion on a similar case hypothetically stated." The Court below, therefore, properly rejected these prayers. The eighth prayer of the defendant, asks the Court to say to the jury that if there was any want of ordinary care on the part of the plaintiff, contributing to the accident, he cannot recover. This prayer is covered by the Court, own instructions.

In the Court's own instructions the jury are told that if they believe the injury was occasioned by the defective and dangerous condition of the defendant's road, and that condition was, or could have been known, in time to prevent the accident by the exercise of ordinary care on the part of the defendant, the plaintiff is entitled to recover unless he contributed to cause his misfortune by driving a

horse not ordinarily gentle, or by driving with one hand disabled from previous ailment so as to interfere with the proper management of his team, or was wanting in that degree of attention, circumspection, skill and care to avoid accident, which ordinary, careful and competent drivers habitually employ, or might reasonably be expected to employ, in similar circumstances.

The defendant has specially excepted to these instructions on the ground that "there is no legally sufficient evidence that the injury complained of was occasioned by the defective, improper and dangerously unsound condition of the defendant's road." There is abundant evidence that the plaintiff was, with his horses and coach, precipitated over the declivity; a number of witnesses testified that the road was in an unsafe condition at this point; and one of these witnesses stated that this very place in the road was called by the drivers "a Hell Trap." This expression, though not very euphonious or refined, is certainly suggestive of the extremely dangerous condition of the defendant's turnpike at that particular locality.

There being no error in any of the rulings of the Court below its judgment must be affirmed.

*Judgment affirmed.*

(Decided 5th January, 1887.)