(Decided November 17th, 1897).

## THE WILLIAMSPORT AND HAGERSTOWN TURNPIKE CO. *vs.* JAS. W. STARTZMAN ET AL.

*Constitutional Law—Obligation of Contracts—Charter of Turnpike Company—Remedy for Non-Repair of Road.*

Appellant is a turnpike company incorporated in 1832 by a Legislative charter which provided that it should be subject to the laws then governing such companies.   There was no reservation to the State of a right to repeal or amend the charter, and the Constitution then in force did not reserve such right.   The Act of 1804, which was the general turnpike law then in force, provided that if a company should neglect to keep its road in good order and repair for the space of fifteen days, a justice of the peace might summon three persons who should investigate the condition of the road, etc., and that tolls should not be demanded until the road was put in order ; there was also a provision for fines for non-repair.   The Act of 1894, ch. 607, provided for the summoning of six jurors by the sheriff upon complaint that a tnrnpike is out of repair, for an inquisition by them to be confirmed by the Circuit Court, and for an order thereon that tolls shall not be collected between the points complained of until the road is repaired.   Appellant was proceeded against under the Act of 1894 and appealed from an order of Court confirming an in-

quisition for non-repair. *Held*, that the Act of 1894 was more favorable to the appellant than was the Act of 1804, and was not such an alteration of the charter as impaired the obligation of the contract between the State and the appellant.

Appeal from an order of the Circuit Court for Washington County (SLOAN, J.)

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS, BOYD and RUSSUM, JJ

*J. Clarence Lane* (with whom was *Henry H. Keedy*, *Jr.*, on the brief), for the appellant.

*Charles D. Wagaman*, for the appellees.

BOYD, J., delivered the opinion of the Court.

The appellant was incorporated by chapter 125 of the laws of 1832 to make a turnpike road from Williamsport to Hagerstown. Section 12 of its charter clothed it with certain rights and powers held by turnpike companies incorporated by the Act of 1804, chapter 51, and provided that it "shall be governed by the same regulations and be subject to the same fines, penalties and restrictions as the said companies now are when the same are not inconsistent with the provisions of this Act." The appellees filed a petition in the Circuit Court for Washington County in pursuance of section 242 of Art. 23 of the Code of Public General Laws, as amended by the Act of 1894, chapter 607, alleging that the appellant had failed to keep its road in good repair at points designated in the petition and seeking such relief as they are entitled to under the laws of this State. By authority of the Court the sheriff summoned a jury of six persons, as directed by the Act of 1894, and returned an inquisition, executed by said jurors, in which they found the road was out of repair at the points named, and had been for such times as are stated in the inquisition. The appellant then filed an answer in which it demurred to the petition on the ground that the provisions in the

Code, and the amendment thereto, could not affect its charter and also made a motion to quash. After hearing the parties the Court below overruled the motion to quash, confirmed the inquisition and ordered " that tolls shall not be charged by the Williamsport and Hagerstown Turnpike Company at the gate mentioned in the petition in this cause until the Williamsport and Hagerstown Turnpike Road shall be put in good order and repair.'' No reservation was made in the charter giving the State power to repeal or amend it, nor did the Constitution then in force reserve the right to alter or amend charters of corporations, as subsequent Constitutions of this State have done. Section 303 of Art. 23 of the Code confers upon all corporations, whether formed under general or special laws, the benefit of that Article, and also makes them subject to the processes, remedies or proceedings by that Article authorized to be taken, by or against the corporations therein referred to, so far as they may be applicable. Section 242, as amended by the Act of 1894, is therefore clearly applicable to this company, unless it in some material way infringes upon the protection guaranteed to it by the Constitution of the United States, which prohibits the States from passing any laws impairing the obligations of contracts.

The question to be determined, therefore, is whether the Act of 1894 has so far altered or amended the charter of the defendant as to impair the obligation of the contract between the State and the appellant. By the charter the State conferred valuable rights upon the company and at the same time imposed certain restrictions and duties upon it. One of its duties, of most importance to the public, is to keep the road " in good and perfect order and repair," during the continuance of the corporation, as is expressly required by the Act of 1804, made part of the charter. If then the Legislature has provided machinery by which the appellant can be compelled to live up to its part of the contract, or surrender its right to collect tolls while it is in default, there can be no question about the right of those in-

terested to make use of such machinery, unless the use of it will impair the contract itself or be expressly or impliedly prohibited by the charter. It has frequently been held by this and other Courts that although there is a clearly defined distinction between the obligation of a contract and the remedy by which it may be enforced, the State cannot take away a remedy that is necessary to the enforcement of the contract, without furnishing some other adequate one, and it cannot under the name or guise of a remedy authorize proceedings that substantially affect the contract itself unless such power has been reserved. If the State had contracted with the appellant that in the event of its default in keeping the road in repair the remedy to compel it should be by some named method and by no other, then it might insist upon that method alone being used against it, as it would be a part of the contract itself, but this charter does not attempt in terms to exclude other remedies. The company is liable to those using the road for injuries occasioned by the want of repairs (*Crowther's case*, 63 Md. 558; *Cassell's case*, 66 Md. 419; *B. & R. Turnpike Road* v. *State*, 71 Md. 573); the State could proceed by *scire facias* for the forfeiture of its charter for non-user or misuser (*W. & B. Turnpike Company* v. *State*, 19 Md. 239), or the appellant could be indicted if the defective condition of the road amounted to a public nuisance (*B. & Y. Turnpike Road* v. *State*, 63 Md. 573). But those remedies are tedious and do not furnish such speedy and summary relief as a complaint of this character requires. This company was granted the privilege of collecting tolls from those using the road in consideration of its keeping it in good order and repair. If it fails to do that for a longer period than allowed by its charter, it has no right to exact tolls, and therefore the Legislatnre has provided a speedy method by which it can be determined whether it is thus in default. By section 26 of chapter 51 of the laws of 1804, it was provided that if a company subject to that law neglect to keep its road in good and perfect order for a space of fifteen days, on infor-

mation being given to a Justice of the Peace of the neighborhood he shall issue a precept to be directed to a constable, commanding him to summon three disinterested persons to meet at the place in the road complained of.   The justice and the persons summoned were then to inquire into the condition of the road and an inquisition made and certified under the hands of the justice and a majority of the persons summoned.   If the road was found by the inquisition to be out of order and repair, the justice was required to send a copy to each of the keepers of the turnpikes or gates between which such defective place was " and from thenceforth the tolls hereby granted to be collected at such turnpikes or gates shall cease to be demanded, paid or collected until the said defective part or parts shall be put in good and perfect order and repair as aforesaid."   It further provided that if the road was not put in repair before the next county Court of the county, the justice should send a copy of the inquisition to the Judges, who shall cause to be brought before them the person or persons in charge of the part of the road out of repair, and if they were " convicted of the offence by the said inquisition charged," the Court was directed to fine them according to the nature and aggravation of the neglect, not exceeding one hundred dollars for every week such place shall have been out of order and repair.   If the company still neglected to have the place repaired within fifteen days after the said fine was imposed, then the Court was directed to fine the president, managers and company, not exceeding two hundred dollars.

Under the Act of 1894, if the road remain out of repair fifteen days, any person or persons can file a petition in the Circuit Court for the county (or in the Superior Court of Baltimore City if the road be in that city), alleging the failure of the company to keep the road in good order and repair, whereupon one of the Judges of the Court must pass an order directing the sheriff to summon a jury of six disinterested freeholders to meet on the part or parts of the road mentioned in the petition, who shall determine, upon

their view of the road and the evidence of such witnesses as may be produced by the petitioners or the company, the condition of the road and the length of time such condition has continued. An inquisition is to be signed and sealed by the jurors and returned by the sheriff to the clerk's office of the Circuit Court for the county, and if the inquisition shall find the road is not in good order and repair any Judge of the Court may within ten days after the return thereof confirm the same and order that tolls shall not be charged by such company at the gates next to the place or places in said road so out of repair until it shall be put in good order and repair. Before the confirmation of the inquisition the petitioners or the company may demand a trial by jury in Court to determine whether said road is in good order and repair or may move to quash the proceedings for matters of law, provided that the confirmation of the inquisition shall not be delayed more than fifteen days by a motion to quash or for a jury trial by the corporation, unless it gives bond conditioned for the refunding of all tolls collected after the expiration of ten days from the return of the inquisition if it be affirmed.

A comparison of the provisions of the laws above referred to will establish the fact beyond all question, we think, that the Act of 1894 is more favorable to the appellant than the Act of 1804. The former gives six jurors to be summoned by the sheriff of the county under orders of the Court instead of three persons to be summoned by a constable, by virtue of a precept of the justice. By the Act of 1804 the decision of three persons that the road is out of repair prevents the collection of tolls until it is put in repair, whilst under the Act of 1894 that result does not follow until the Court confirms the inquisition, and if seasonable application be made the company can have a jury trial in Court. Surely such a change in the remedy cannot be said to impair the contract or prejudice the appellant. Nor can we see how the failure to provide for fines in the Act of 1894 can possibly injure it. If the State is satisfied with a

milder punishment of the appellant for neglect of its duty than might be inflicted under its charter, it is difficult to understand how it can be said that the appellant has been injured by the lessening of the penalty. The Code differs in some respects from the methods prescribed in the charter, but the differences are not so at variance with the proceedings contemplated by the charter as to make them either onerous, oppressive or unconstitutional. We do not mean to say that the remedy named in the charter could not still be pursued, as was done in *Francis* v. *Weaver*, 76 Md. 457, but if the parties entitled thereto see proper to adopt the proceedings pursued in this case it cannot be objected to on constitutional grounds.

It has been urged on behalf of the appellant that the Act of 1894 makes a material change because it also provides this remedy for failure to keep the road " of such width as required by the terms of the laws under or by which incorporated," and that sections 243 and 244 of Art. 23 of the Code contemplate forfeitures of the roads, for failing to keep them in proper repair and of prescribed width. As those questions are not in any manner involved in this case, it is unnecessary to determine .whether the appellant can be affected by those provisions. This proceeding is only to prevent the collection of tolls until the road is put in repair and as we have no doubt about the right of the appellees to invoke the remedies furnished by the Act of 1894 to accomplish that end, we will affirm the order of the Court below.

In *Francis* v. *Weaver*, *supra*, it was held that there could be no appeal to this Court. As the question was not raised, we have thought it best to determine this case on its merits, without passing any opinion on the right of appeal in proceedings of this character.

> *Order affirmed, costs to be paid by the appellant.*

(Decided November 17th, 1897).