676 A.2d 80

Steven MANGUM

v.

STATE of Maryland.

No. 82, Sept. Term, 1995.

Court of Appeals of Maryland.

May 15, 1996.

Submitted on brief by Martha Weisheit, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Petitioner.

Rachel Marblestone Kamins, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), Baltimore, for Respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

RAKER, Judge.

In this case, we are asked to decide whether the State must introduce direct evidence of a recovered firearm's operability to prove a violation of Maryland Code (1957, 1992 Repl.Vol., 1995 Cum.Supp.) Article 27, § 36B(b).[1] We shall hold that direct evidence is not required, and that operability of a firearm can be proved solely by circumstantial evidence.

---

1. Unless otherwise specified, all statutory citations herein are to Maryland Code (1957, 1992 Repl.Vol., 1995 Cum.Supp.) Article 27.

## I.

On the evening of April 24, 1993, at approximately 9:30 p.m., off-duty police officer Robert Johnson, Jr. observed Petitioner, Steven Mangum, with a male companion in the lobby of the Motel Six. Johnson saw Mangum repeatedly adjusting his jacket, while exiting and reentering the motel lobby at least three times. When he noticed a bandolier of shotgun shells draped over Mangum's shoulder, Officer Johnson suspected criminal activity and requested that the motel's night clerk telephone for police back-up.

In response to the call for assistance, uniformed police officer Rubin Johns arrived at the motel. Johns asked Mangum to step outside with him. As Officer Johns was about to conduct a pat-down of Mangum, several shotgun shells fell to the ground. Officer Johns then felt what he believed to be a sawed-off shotgun underneath Mangum's left armpit. Mangum was arrested for possession of a handgun. The weapon was a sawed-off shotgun with a barrel length of 14 inches and an overall length of 22 inches. Mangum related to Officer Johns that certain individuals were following him, and that, fearing for his life, he rented a room at the motel.[2] At the trial, Officer Johns testified that Mangum told him he had just been released from the Baltimore City Jail, where he had been held in connection with a shooting incident involving a shotgun that had occurred at his home less than twenty-four hours earlier.

Mangum was subsequently charged in the District Court of Maryland for Baltimore County with one count of carrying a handgun in violation of § 36B(b) and one count of possession of an unregistered short-barreled shotgun in violation of § 481C. He requested a jury trial, and the case was transferred to the Circuit Court for Baltimore County pursuant to

---

2. Mangum's mother corroborated his assertion that he feared for his life because he had been involved in a shooting incident with an "executioner" from New York. She testified that she observed a suspicious-looking driver of an automobile with New York license plates parked outside their home.

Maryland Rule 4–301. At his trial, Mangum asserted the defense of "necessity" based on his alleged fear of imminent death or serious bodily injury. *See State v. Crawford,* 308 Md. 683, 698–99, 521 A.2d 1193, 1200–01 (1987). In his motion for judgment of acquittal, Mangum argued that the State had not proven that the weapon was operable because the State failed to prove that the weapon was capable of firing a projectile. The State contended that circumstantial evidence was sufficient to meet the State's burden of proof, and that test-firing the weapon was not required to prove operability.

Sitting without a jury, the trial court convicted Mangum of both firearm offenses.[3] The Court of Special Appeals affirmed Mangum's convictions in an unreported opinion. We granted a writ of certiorari to resolve a single issue presented by this case:

> In a prosecution under § 36B(b), can proof of operability be supplied by inference when the gun has been recovered and the State is able to provide direct evidence on that issue?

## II.

Article 27, § 36B(b) provides, in pertinent part:

> (b) *Unlawful wearing, carrying, or transporting of handguns; penalties.*—Any person who shall wear, carry, or transport any handgun, whether concealed or open, upon or about his person . . . shall be guilty of a misdemeanor; and it shall be a rebuttable presumption that the person is knowingly transporting the handgun[.]

Section 36F(b) defines a handgun as "any pistol, revolver, or other firearm capable of being concealed on the person, including a short-barreled shotgun . . . as these terms are defined below[.]" Section 36F(e) defines a "short-barreled shotgun" as any "shotgun having one or more barrels less than eighteen inches in length and any weapon made from a shotgun (wheth-

---

**3.** For sentencing purposes, the trial court merged Mangum's conviction for possession of an unregistered short-barreled shotgun into his conviction for unlawfully carrying a handgun.

er by alteration, modification, or otherwise) if such weapon, as modified, has an overall length of less than twenty-six inches." A "shotgun" is further defined by § 36F(g):

(g) *Shotgun.*— "Shotgun" means a weapon designed or re-designed, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger.

In other words, a shotgun with a barrel length of less than eighteen inches and an overall length of less than twenty-six inches is by definition a "handgun" in the context of § 36B(b). *Cf. Parrison v. State,* 335 Md. 554, 563, 644 A.2d 537, 541 (1994).

These broad statutory strokes, however, do not fully expli-cate Maryland's prohibition against carrying, possessing, or transporting a handgun. *See Howell v. State,* 278 Md. 389, 391–96, 364 A.2d 797, 798–801 (1976). In determining whether a tear gas pistol met the statutory definition of a "handgun" in § 36B(b), we observed in *Howell* that while the statute details what the term "handgun" includes, the word is not in any way further defined. *Howell,* 278 Md. at 391, 364 A.2d at 798. Speaking for the Court, Judge Smith reasoned that in order to effectuate the intent of the General Assembly, a "handgun," as contemplated within the meaning of § 36F(b) and § 36B(b), must also be a "firearm":

If we regard the statute here as intending to define the term handgun as "any pistol, revolver, or *other* firearm" then the only way that "no word, clause, sentence, or phrase [may not] be rendered surplusage, superfluous, meaning-less, or nugatory," is to conclude that the presence of the word "other" before "firearm" is an indication that the General Assembly intended that to be a "handgun" the device under consideration must be a firearm.

*Id.* at 394, 364 A.2d at 800 (citations omitted). Thus, we concluded that to be a "handgun" in violation of § 36B(b), "[the weapon] must be a firearm or it must be readily or easily

convertible into a firearm." *Id.* at 396, 364 A.2d at 801. We further concluded that "to be a firearm it must propel a missile by gunpowder or some such similar explosive...." *Id.* The Court of Special Appeals assumed that in order to sustain a conviction under § 36B(b), the State must prove, beyond a reasonable doubt, the operability of the handgun at the time of the alleged offense. Therefore, for purposes of this case, we shall assume *arguendo* that the statute requires proof of operability.

### III.

Petitioner concedes that when the State does not recover the weapon upon which the handgun charge is predicated, the State may still prove operability beyond a reasonable doubt *solely* by the introduction of circumstantial evidence. *See Brown v. State,* 64 Md.App. 324, 333–37, 494 A.2d 999, 1003–05 (1985), *cert. denied,* 304 Md. 296, 498 A.2d 1183 (1985); *Johnson v. State,* 44 Md.App. 515, 516–19, 411 A.2d 118, 119–21 (1980), *cert. denied,* 287 Md. 753 (1980); *Couplin v. State,* 37 Md.App. 567, 575–78, 378 A.2d 197, 202–03 (1977), *cert. denied,* 299 Md. 137, 472 A.2d 1000 (1978). Thus, according to Petitioner, the manner in which the State may meet its burden of proof depends upon whether the weapon is recovered.

Petitioner advances several arguments to support this proposition. He initially urges that, as a policy matter, there would be little incentive for the State to test a weapon for operability if it were allowed to rely exclusively upon circumstantial evidence. Mangum also contends that since the State can test the weapon with negligible inconvenience, it should be required to introduce the results of a test-firing as the "best evidence" of operability. Finally, Petitioner asserts that because the recovered weapon is "peculiarly available" to the State, due process considerations require the State to perform the additional task of test-firing the weapon. Thus, he reasons that if the State recovers the handgun, then the prosecution must introduce the results of a test-firing, or the defendant is entitled to an acquittal on the handgun charge. By contrast, the State urges that precedent does not support an

evidentiary distinction between direct and circumstantial evidence based merely upon the fortuitous contingency of whether the police recover the weapon. Such a policy, argues the State, penalizes the prosecution when the police recover the weapon in question, and also ignores the modern principle that circumstantial evidence carries the same probative force as direct evidence. We agree with the State.

## IV.

It has long been the rule in Maryland that "there is no difference between direct and circumstantial evidence." *Hebron v. State*, 331 Md. 219, 226, 627 A.2d 1029, 1032 (1993). Neither policy nor logic supports a special evidentiary distinction when the issue is operability of a firearm. We hold that operability may be proved by circumstantial evidence. "[W]hether direct evidence or circumstantial evidence is more trustworthy and probative depends upon the particular facts of the case and no generalizations realistically can be made that one class of evidence is per se more reliable than is the other class of evidence." *Hebron*, 331 Md. at 225, 627 A.2d at 1032 (quoting *State v. Gosby*, 85 Wash.2d 758, 766, 539 P.2d 680, 685 (1975)); *see* 1 McCormick on Evidence § 185, at 777 n. 19 (J. Strong ed., 4th ed. 1992). Petitioner's arguments implicitly embrace the premise that circumstantial evidence is in some manner inferior to direct evidence. This rationale relies upon the assumption that, while direct evidence tends to establish the existence of a fact in question without resort to inference, circumstantial or indirect evidence requires the factfinder to undertake certain inferential steps before the fact in question is proved, and is therefore less reliable. Our cases, and the great weight of persuasive authority, have consistently rejected this distinction.[4] *Hebron v. State*, 331

---

4. Professor Wigmore, in his treatise Evidence in Trials at Common Law, rejects the view that greater weight should be ascribed to direct evidence over circumstantial evidence, recognizing that each class has its special advantages and disadvantages. IA J. Wigmore, Evidence in Trials at Common Law §§ 25–26, at 952–64 (Tillers rev. ed. 1983). He

Md. at 226, 627 A.2d at 1032; *Wilson v. State,* 319 Md. 530, 536, 573 A.2d 831, 834 (1990). *See also Payne v. Borg,* 982 F.2d 335, 339 (9th Cir.1992), *cert. denied,* 510 U.S. 843, 114 S.Ct. 131, 126 L.Ed.2d 94 (1993); *United States v. Casamento,* 887 F.2d 1141, 1156 (2d Cir.1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990), *aff'd on other grounds sub nom Polizzi v. United States,* 926 F.2d 1311 (1991); *United States v. Wood,* 879 F.2d 927, 938 (D.C.Cir. 1989); *People v. Geraci,* 85 N.Y.2d 359, 369, 625 N.Y.S.2d 469, 475, 649 N.E.2d 817, 823 (1995); *Comm. v. Chambers,* 528 Pa. 558, 568, 599 A.2d 630, 635 (1991), *cert. denied,* 504 U.S. 946, 112 S.Ct. 2290, 119 L.Ed.2d 214 (1992); *Derr v. Comm.,* 242 Va. 413, 424, 410 S.E.2d 662, 668 (1991); *Bernard v. United States,* 575 A.2d 1191, 1193 (D.C.1990); IA J. WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 26, at 961 (Tillers rev. ed. 1983).[5]

---

recounts the following anecdote as illustrative of the prejudice against circumstantial evidence:

> *1 Courts and Lawyers of Indiana* (Esarey & Shockley eds. 1916): [In the early days of trial courts in Indiana] the following case of circumstantial evidence is culled from the same "Sketches" as the others. It happened in Judge Eggleston's court, presided over, however, by the associates. The case was for five dollars damages for killing a dog. The plaintiff testified that he saw the defendant pick up his rifle, run across a lot, rest it on a fence, saw a flash, heard the report, saw the dog fall, went up to him, and saw the bullet hole just behind his front leg. The evidence seemed conclusive. All appeared lost, but the defendant's attorney was not disconcerted. He knew the associates had just been reading a new law book, Philipp's Evidence, which cautioned judges against the pitfalls of circumstantial evidence. He therefore recalled the witness, had him repeat his evidence and ended by asking him if he saw the bullet hit the dog. When the witness refused to testify to the fact, the lawyer casually observed to the court, "A case of mere circumstantial evidence," and rested his case. After due deliberation, the court announced, "This is a plain case of circumstantial evidence, judgment for the defendant."

*Id.* § 26, at 961. The revisor, Peter Tillers, notes that: "Wigmore's view that circumstantial evidence may be as persuasive and as compelling as testimonial evidence, and sometimes more so, is now generally accepted." *Id.*

**5.** We note one caveat to this rule. Circumstantial evidence does not suffice when the State relies on a single strand of circumstantial evidence, and that strand is consistent with either a reasonable hypoth-

While circumstantial or indirect evidence may in some cases tend to prove an erroneous conclusion, this is equally true of direct or testimonial evidence. *Hebron*, 331 Md. at 225, 627 A.2d at 1032 (quoting *Holland v. United States*, 348 U.S. 121, 139–40, 75 S.Ct. 127, 137–38, 99 L.Ed. 150, 166–67 (1954)). "Circumstantial evidence is as persuasive as direct evidence. With each, triers of fact must use their experience with people and events to weigh probabilities." *Mallette v. Scully*, 752 F.2d 26, 32 (2d Cir.1984).

Courts in other jurisdictions have also concluded that circumstantial evidence is as probative as direct evidence in determining the operability of a firearm. *E.g., Peterson v. United States*, 657 A.2d 756, 763 (D.C.1995) (holding that operability can be proved by circumstantial evidence). Moreover, the trier of fact may infer operability from a visual inspection of the weapon, without the aid of expert testimony. *Comm. v. Stallions*, 9 Mass.App.Ct. 23, 398 N.E.2d 738, 740–41 (1980). "Just as it would have been reasonable for the [potential victims] to believe that appellants' weapons were operable, so too would it be reasonable for the jury to conclude likewise." *Bartley v. United States*, 530 A.2d 692, 698 (D.C.1987).

The facts of the present case illustrate how circumstantial evidence may prove the operability of a weapon beyond a reasonable doubt. The record in this case is replete with testimony that Mangum feared for his life. *See King v. State*, 839 S.W.2d 709, 713–14 (Mo.Ct.App.1992) (observing that carrying a weapon for protection supports the reasonable inference that the weapon is operable); *accord United States v. Polk*, 808 F.2d 33, 34 (8th Cir.1986) (per curiam). When Officer Johns conducted the pat-down of Mangum, he found the shotgun shells in close proximity to the gun. Moreover, Petitioner testified that on the day before his arrest, he had been involved in an incident where he had discharged a

---

esis of guilt or a reasonable hypothesis of innocence. *Hebron v. State*, 331 Md. 219, 228, 627 A.2d 1029, 1033 (1993). *See also* 5 L. McLain, Maryland Evidence § 300.4, at 71–72 n. 20 (1987 & 1995 Cum.Supp.).

shotgun. *See State v. Stedtfeld*, 108 Idaho 695, 701 P.2d 315, 318 (1985) (concluding witnesses' familiarity with firearms was evidence of operability). The State also presented evidence of Mangum's possession of a bandolier of ammunition, and evidence of criminal activity sufficient to imply his familiarity with firearms. *People v. Smith*, 38 Cal.App.3d 401, 410, 113 Cal.Rptr. 409, 416 (1974) (noting loaded shotgun and additional shells are evidence of a weapon's operability). Given the totality of this evidence, the trial court could have inferred beyond a reasonable doubt that on April 24, fearing for his life, Petitioner possessed an operable firearm.

## V.

■ Petitioner also asserts that, since the facts pertinent to the weapon's operability are "peculiarly within the State's knowledge," due process considerations mandate that the State, the party in possession of the evidence, fully investigate that evidence. We need not conduct a detailed due process analysis, however, because we reject Mangum's premise that proof of the weapon's operability was peculiarly within the State's control.

Maryland Rule 4–263(b)(5) expressly provides that upon the request of the defendant, the State's Attorney shall produce and permit the defendant to inspect, copy, and photograph any documents, recordings, photographs, or other tangible things that the State intends to use at the hearing or trial. Implicit in this Rule is the right of a defendant, subject to an appropriate protective order, to have independent testing performed on the gun that is to be used as evidence against him.[6] *Cf. United States v. Butler*, 988 F.2d 537, 543 (5th Cir.1993) (concluding that under Federal Rule of Criminal Procedure

---

6. Of course, this right may be qualified or limited in certain situations, none of which is at issue in this case. *See McBride v. State*, 838 S.W.2d 248, 251 n. 6 (Tex.Crim.App.1992) (noting that the right to inspect evidence may be qualified "where the evidence is not available for inspection such as when the evidence has been destroyed in the process of analysis"). *See also State v. Foraone*, 425 A.2d 523, 526 (R.I.1981); *State v. Cloutier*, 302 A.2d 84, 89 (Me.1973); *State v. Superior Court*, 78 Ariz. 74, 275 P.2d 887, 890 (1954).

16(a)(1)(C), defendant should have been permitted to conduct independent test on the controlled substance to be used as evidence against him), *cert. denied,* 510 U.S. 956, 114 S.Ct. 413, 126 L.Ed.2d 359 (1993); *United States v. Noel,* 708 F.Supp. 177, 177–78 (W.D.Tenn.1989); *United States v. Pollock,* 402 F.Supp. 1310, 1312 (D.Mass.1975); *United States v. Taylor,* 25 F.R.D. 225, 227–28 (E.D.N.Y.1960); *State v. Faraone,* 425 A.2d 523, 525–26 (R.I.1981); *State v. Cloutier,* 302 A.2d 84, 86–89 (Me.1973); *Jackson v. State,* 243 So.2d 396, 397–98 (Miss.1970); 1 AMERICAN BAR ASS'N, ABA STANDARDS FOR CRIMINAL JUSTICE 62–63 (3d ed. 1996) (Discovery and Trial by Jury Standard 11–3.2(b), Preservation of Evidence and Testing or Evaluation by Experts).[7] Mangum made no such request. His argument that knowledge of the weapon's operability was peculiarly within the State's control is without merit and thus, his due process claim is inapposite.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.*

---

**7.** The third edition of the ABA Criminal Justice Standards includes a new provision, Standard 11–3.2, "Preservation of evidence and testing or evaluation by experts," setting forth procedures to govern requests to test physical evidence in the possession of the opposing party. 1 AMERICAN BAR ASS'N, ABA STANDARDS FOR CRIMINAL JUSTICE 62–63 (3d ed. 1996) (Discovery and Trial by Jury Standard 11–3.2). The Standard provides:

(a) If either party intends to destroy or transfer out of its possession any objects or information otherwise discoverable under these standards, the party should give notice to the other party sufficiently in advance to afford that party an opportunity to object or take other appropriate action.

(b) Upon motion, either party should be permitted to conduct evaluations or tests of physical evidence in the possession or control of the other party which is subject to disclosure. The motion should specify the nature of the test or evaluation to be conducted, the names and qualifications of the experts designated to conduct evaluations or tests, and the material upon which such tests will be conducted. The court may make such orders as are necessary to make the material to be tested or examined available to the designated expert.

(i) The court should condition its order so as to preserve the integrity of the material to be tested or evaluated.

(ii) If the material is contraband material or a controlled substance, the entity having custody of the material may elect to have a representative present during the testing of the material.