702 A.2d 741

**Kenneth Bernard ROBINSON**

v.

**STATE of Maryland.**

**No. 106, Sept. Term, 1996.**

Court of Appeals of Maryland.

Nov. 19, 1997.

Joy L. Phillips, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Petitioner.

Rachel Marblestone Kamins, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen, on brief), Baltimore, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI *, RAKER and WILNER, JJ.

RAKER, Judge.

In this case, Petitioner Kenneth Robinson was found guilty by a jury of possession of cocaine in violation of Maryland

---

* Karwacki, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the adoption of this opinion.

Code (1957, 1996 Repl.Vol., 1997 Supp.) Article 27, § 287(a).[1] Following his arrest, Robinson ingested a substance alleged to be cocaine, and therefore it was not available for chemical analysis. We resolve two issues presented in this case: (1) whether the State must introduce the results of a chemical analysis to prove beyond a reasonable doubt the composition of that substance; and (2) whether the trial court erred by allowing the introduction of lay opinion testimony that the disputed substance was in fact crack cocaine. We conclude that proof based on scientific analysis or expert testimony is not required to prove the nature of a controlled substance, and that the State may base a conviction for the possession of a controlled dangerous substance solely upon circumstantial evidence. The lay opinion testimony in this case, however, was inadmissible because that evidence was not competent for the purpose for which it was offered.

I.

On November 20, 1994, Trooper Donald Harrison of the Maryland State Police was patrolling Route 4, just north of Leonardtown, Maryland. At 11:30 p.m., Trooper Harrison stopped an automobile for exceeding the posted speed limit. Robinson was seated in the front passenger seat. As Trooper Harrison approached the automobile, he observed Robinson making "suspicious and furtive movements toward the floorboard of the vehicle." When the driver of the car was unable to produce either a driver's license or a registration card, Trooper Harrison ordered both the driver and Robinson out of the automobile. A subsequent "wanted check" revealed an outstanding parole retake warrant for Robinson. During a search of Robinson at the side of the road, the trooper seized a plastic container concealed in Robinson's sock. Inside the container was a transparent plastic baggie holding eight rocks that Trooper Harrison believed to be crack cocaine. The

---

1. Unless otherwise specified, all statutory references herein shall be to Maryland Code (1957, 1996 Repl.Vol., 1997 Supp.) Article 27.

trooper arrested Robinson and transported him to the Leon-ardtown police barracks.

At the Leonardtown barracks, Robinson was handcuffed to the desk of Trooper Harrison. The trooper then placed the plastic baggie containing the suspected crack cocaine on his desk. Accommodating Robinson's request to use the bath-room, Trooper Harrison removed the handcuffs, allowing Rob-inson to be escorted to and from the bathroom by Trooper Mark Karwacki. Upon his return from the bathroom, Robin-son suddenly ran away from Karwacki and hurled himself at Trooper Harrison. Pinning Trooper Harrison against a wall, Robinson initially punched and kicked Harrison. Moments later, Robinson began to repeatedly punch and kick Trooper Karwacki as well. During the fracas, Robinson seized the baggie containing the eight rocks and swallowed it. Shortly thereafter, Robinson was taken to St. Mary's Hospital, where he remained for several days. Neither the rocks nor the baggie were ever recovered.

As a result of this incident, Robinson was charged by criminal information with, *inter alia,* possession of cocaine in violation of Article 27, § 287(a), possession of cocaine with intent to distribute in violation of § 286(a), and two counts of common law battery. Robinson was subsequently tried before a jury in the Circuit Court for St. Mary's County.[2] Since Robinson ingested the suspected cocaine, neither the sub-stance itself nor a chemical analysis was introduced at trial. The State's proof as to the identity of the chemical composi-tion of the suspected contraband was based primarily on the visual identification of the substance by Troopers Harrison and Karwacki.

Trooper Harrison testified that he got a "good look" at the baggie and its contents when it was on his desk. He de-scribed the substance he seized from Robinson as eight crys-talline rocks with jagged edges, creamy-yellowish in color,

---

**2.** Prior to trial, the State entered a *nolle prosequi* to the charge of possession of cocaine with intent to distribute.

with each rock between an eighth of an inch and a quarter of an inch in length.[3] The prosecutor then asked Trooper Harrison to give his opinion as to the identity of the substance that he seized from Robinson. Defense counsel objected on the grounds that Harrison was not an expert in narcotics identification, and therefore was not qualified to identify the contraband based upon sight alone. The trial judge overruled the objection and Trooper Harrison testified that the suspected contraband seized from Robinson was, in his opinion, crack cocaine.[4]

The State then called Trooper Karwacki to the witness stand. Karwacki testified that he had handled and observed the suspected contraband at the Leonardtown barracks. Specifically, he stated that he removed the transparent baggie from its plastic container and "could see the eight pieces clearly." After the State established Karwacki's credentials,[5]

---

**3.** Harrison testified he had been a police officer for sixteen months prior to trial, he had received training at the Maryland State Police Academy in drug and narcotics identification and detection, and he had completed an additional three day course conducted by the United States Drug Enforcement Administration on basic narcotics, as well as an additional twenty-one hours of drug and narcotics training with the Maryland State Police. This training included the visual identification of crack cocaine. Trooper Harrison also testified that he had made between fifteen to twenty arrests for illegal narcotics activity, and that his identification of a substance as crack cocaine had always been confirmed by subsequent chemical analysis.

**4.** After the trial court overruled the objection of defense counsel, Trooper Harrison testified as follows:
PROSECUTOR: Based on your past experience and training as a police officer, do you have an opinion as to what the substance was when you seized it from the defendant on November 20, 1994?
TROOPER HARRISON: Yes. I do.
PROSECUTOR: Would you tell that opinion?
TROOPER HARRISON: Crack cocaine.

**5.** Trooper Karwacki's training consisted of courses taken through the police academy and the United States Drug Enforcement Administration, as well as approximately one dozen classes on drug identification after his initial training. Karwacki testified that he had made hundreds of arrests involving suspected narcotics, and that, to his knowledge, all of his arrests for suspected crack cocaine were confirmed by subsequent chemical analysis.

he was also permitted, over the objection of defense counsel, to offer his opinion that the substance seized from Robinson was crack cocaine.[6] The jury convicted Robinson of possession of crack cocaine and two counts of battery. The trial judge sentenced Robinson to eight years incarceration for the battery of Trooper Harrison, four years incarceration for the cocaine possession, to be served consecutive to the battery of Trooper Harrison, and eight years incarceration, suspended, for the battery of Trooper Karwacki.

Robinson noted a timely appeal to the Court of Special Appeals. In an unreported opinion, the intermediate appellate court affirmed Robinson's convictions.[7] We then granted Robinson's petition for certiorari.

Before this Court, Robinson seeks to reverse his conviction for possession of cocaine on a number of grounds. Initially, he argues that proof of a controlled substance may be established only through chemical analysis. Robinson also contends that the testimony of Troopers Harrison and Karwacki was inadmissible because, after only a visual inspection of the alleged contraband, they could not rationally conclude that the substance was in fact crack cocaine. In contrast, the State argues that the trial court properly admitted the lay testimony of Troopers Harrison and Karwacki because their training and experience assisted the jury in determining whether the sus-

---

6. After repeated objections by defense counsel, Trooper Karwacki's testimony was as follows:

PROSECUTOR: [B]ased on your past experience and training as a police officer, do you have an opinion as to what the substance was which you looked at from Trooper Harrison in the early morning hours of November 2—of November 2[1], 1994?
* * * * * *
TROOPER KARWACKI: I do have an opinion.
PROSECUTOR: What is it?
* * * * * *
TROOPER KARWACKI: That it was, in fact, eight pieces of crack cocaine.

7. Although the Court of Special Appeals affirmed Robinson's convictions, that court vacated the sentences imposed by the Circuit Court for St. Mary's County. We do not address the decision to vacate those sentences in this appeal.

pected cocaine was in fact a controlled substance. Thus, reasons the State, any infirmity in this visual identification by the troopers goes to the weight of that testimony, and not to its admissibility.

## II.

▮ Robinson argues in the first instance that proof of the chemical composition of the alleged controlled substance may be established solely by chemical analysis. We disagree. The result advocated by Robinson would deviate from a fundamental evidentiary principle: Circumstantial evidence is in no manner intrinsically inferior to direct evidence.[8] *State v. Gray*, 344 Md. 417, 424 n. 5, 687 A.2d 660, 664 n. 5, *cert. granted*, —— U.S. ——, 117 S.Ct. 2452, 138 L.Ed.2d 210 (1997); *Mangum v. State*, 342 Md. 392, 398–400, 676 A.2d 80, 82–84 (1996). " '[W]hether direct evidence or circumstantial evidence is more trustworthy and probative depends upon the particular facts of the case and no generalizations realistically can be made that one class of evidence is per se more reliable than is the other class of evidence.' " *Hebron v. State*, 331 Md. 219, 225, 627 A.2d 1029, 1032 (1993) (quoting *State v. Gosby*, 85 Wash.2d 758, 539 P.2d 680, 685 (1975)). In a given case, circumstantial evidence may be *more* persuasive than direct evidence. *E.g., Janifer v. Jandebeur*, 551 A.2d 1351, 1352 (D.C.1989) (citing *Michalic v. Cleveland Tankers, Inc.*,

---

**8.** In a recent decision, *Mangum v. State*, 342 Md. 392, 676 A.2d 80 (1996), we rejected the similar argument that to establish the operability of a firearm beyond a reasonable doubt, the State must introduce the results of a test firing as direct evidence:

Petitioner's arguments implicitly embrace the premise that circumstantial evidence is in some manner inferior to direct evidence. This rationale relies upon the assumption that, while direct evidence tends to establish the existence of a fact in question without resort to inference, circumstantial or indirect evidence requires the factfinder to undertake certain inferential steps before the fact in question is proved, and is therefore less reliable. Our cases, and the great weight of persuasive authority, have rejected this distinction.

*Id.* at 398, 676 A.2d at 83 (footnote omitted); *accord Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir.1991) (*en banc* ) (Posner, J.) (noting that "all knowledge is inferential").

364 U.S. 325, 330, 81 S.Ct. 6, 11, 5 L.Ed.2d 20 (1960)). We note that the great weight of authority from other state and federal courts recognizes that circumstantial or indirect evidence may be sufficient, standing alone, to establish the nature of a controlled substance. *United States v. Wright,* 16 F.3d 1429, 1439 (6th Cir.), *cert. denied,* 512 U.S. 1243, 114 S.Ct. 2759, 129 L.Ed.2d 874 (1994); *United States v. Kelly,* 14 F.3d 1169, 1174 (7th Cir.1994); *Griffin v. Spratt,* 969 F.2d 16, 22 n. 2 (3rd Cir.1992); *United States v. Walters,* 904 F.2d 765, 770 (1st Cir.1990); *United States v. Westbrook,* 896 F.2d 330, 336 (8th Cir.1990); *United States v. Sanchez DeFundora,* 893 F.2d 1173, 1175 (10th Cir.), *cert. denied,* 495 U.S. 939, 110 S.Ct. 2190, 109 L.Ed.2d 518 (1990); *United States v. Brown,* 887 F.2d 537, 542 (5th Cir.1989); *United States v. Harrell,* 737 F.2d 971, 978 (11th Cir.1984), *cert. denied,* 470 U.S. 1027, 105 S.Ct. 1392, 84 L.Ed.2d 781 (1985); *United States v. Dolan,* 544 F.2d 1219, 1221 (4th Cir.1976); *Urrutia v. State,* 924 P.2d 965, 968 (Wyo.1996); *In re Interest of C.T.,* 521 N.W.2d 754, 757–58 (Iowa 1994); *Bernard v. United States,* 575 A.2d 1191, 1193 (D.C.1990); *State v. Lesac,* 231 Neb. 718, 437 N.W.2d 517, 519 (1989); *Chancey v. State,* 256 Ga. 415, 349 S.E.2d 717, 725 (1986), *cert. denied,* 481 U.S. 1029, 107 S.Ct. 1954, 95 L.Ed.2d 527 (1987); *In re Reismiller,* 101 Wash.2d 291, 678 P.2d 323, 325 (1984); *State v. Starr,* 204 Mont. 210, 664 P.2d 893, 895–96 (1983); *People v. Edwards,* 198 Colo. 52, 598 P.2d 126, 128 (1979); *Com. v. Myers,* 452 Pa.Super. 299, 681 A.2d 1348, 1353 n. 5 (1996), *cert. granted,* 694 A.2d 620 (Pa.1997); *State v. Anderson,* 176 Wis.2d 196, 500 N.W.2d 328, 330–31 (App.1993); *State v. Northrup,* 16 Kan.App.2d 443, 825 P.2d 174, 177–78 (1992) (citing cases); *Myrick v. Com.,* 13 Va.App. 333, 412 S.E.2d 176, 179–80 (1991); *Swain v. State,* 805 P.2d 684, 685–86 (Okla.Crim.App.1991).

■ We hold that the nature of a suspected controlled, dangerous substance, like any other fact in a criminal case, may be proven by circumstantial evidence.[9] *See Weller v.*

---

**9.** The United States Court of Appeals for the Fourth Circuit in the seminal case on this issue, *United States v. Dolan,* 544 F.2d 1219 (4th

**114**

*State,* 150 Md. 278, 282, 132 A. 624, 625–26 (1926) (upholding the admission of lay opinion testimony "that the distillation smelled like 'moonshine whiskey' and 'moonshine' "). While we need not define today the precise limits of our holding, we observe that a contrary decision would bar the State from proving the identity of a controlled substance beyond a reasonable doubt *every* time the suspected substance is not recovered. Moreover, " '[i]llegal drugs will often be unavailable for scientific analysis because their nature is to be

---

Cir.1976), identified six factors which, even without the introduction of expert chemical analysis, may establish beyond a reasonable doubt the *identity of a substance in an alleged narcotics transaction:*

(1) the physical appearance of the substance involved in the transaction;
(2) evidence that the substance produced the expected effects when sampled by someone familiar with the illicit drug;
(3) evidence that the substance was used in the same manner as the illicit drug;
(4) testimony that a high price was paid in cash for the substance;
(5) evidence that transactions involving the substance were carried on with secrecy or deviousness; and
(6) evidence that the substance was called by the name of the illegal narcotic by the defendant or others in his presence.

*Id.* at 1221. "This list is not exclusive, and the State is not required to prove that all the circumstances were present in order to obtain a sustainable conviction." *Urrutia v. State,* 924 P.2d 965, 968 (Wyo. 1996).

Other courts have subsequently identified other factors which have contributed to the state's burden of proving circumstantially the identity of controlled substance, including: whether the substance was packaged as a controlled substance, *State v. Mitchell,* 130 Idaho 134, 937 P.2d 960, 962 (App.1997); whether the substance was treated by another party in a transaction (buyer or seller) as a controlled substance, *Bernard v. United States,* 575 A.2d 1191, 1194 (D.C.1990); whether the substance was the subject of bargained-for exchange, *Howard v. Com.,* 787 S.W.2d 264, 267 (Ky.Ct.App.1989); whether the substance was responsible for a change in the defendant's behavior after ingestion, *Chancey v. State,* 256 Ga. 415, 349 S.E.2d 717, 725 (1986), *cert. denied,* 481 U.S. 1029, 107 S.Ct. 1954, 95 L.Ed.2d 527 (1987); whether the identity of the substance was corroborated by testimony as to the expected effects of the narcotic, *State v. Watson,* 231 Neb. 507, 437 N.W.2d 142, 150 (1989); whether the identity of the substance was corroborated by the defendant's reference to the narcotic as "very good stuff," *Swain v. State,* 805 P.2d 684, 686 (Okla.Crim.App. 1991); and whether the identity of the substance was corroborated by the known odor of the narcotic, *State v. Salois,* 235 Mont. 276, 766 P.2d 1306, 1310 (1988).

consumed.' " *Bernard,* 575 A.2d at 1194 (quoting *United States v. Schrock,* 855 F.2d 327, 334 (6th Cir.1988)); *see Lobatos v. State,* 875 P.2d 716, 720 (Wyo.1994). As we said in *Mangum,* neither policy nor logic supports any evidentiary distinction between direct and circumstantial evidence. *Mangum,* 342 Md. at 398, 676 A.2d at 83.

### III.

### A.

Recognizing the prevailing view that the identity of a substance may be proven by circumstantial evidence, Robinson argues in the alternative that the opinion testimony of Troopers Harrison and Karwacki was inadmissible because a lay witness could not rationally identify a substance as crack cocaine based upon visual inspection alone. We agree.

In distinguishing between opinion testimony, as opposed to testimony detailing solely factual information, this Court has previously defined

> [a]n opinion [as] a belief based upon inferences drawn from ascertained or assumed facts, the soundness of which depends both on the truth of the premises and upon the knowledge, skill, and intelligence of the witness, and is to be distinguished from positive knowledge based upon the direct evidence of the senses.

*Baltimore C. & A. Rwy. Co. v. Turner,* 152 Md. 216, 225, 136 A. 609, 612 (1927). This distinction between testimony conveying opinion, and testimony merely relating fact, was a product of the common law system of proof, and its exacting "insistence upon the most reliable sources of information." 1 MCCORMICK ON EVIDENCE § 10, at 37 (J. Strong ed., 4th ed.1992). Born of this insistence upon reliability was the evidentiary rule that generally "witnesses are not allowed to testify to their opinions or conclusions on material matters, but must [only] state facts within their knowledge relevant to the issues." 2 UNDERHILL'S CRIMINAL EVIDENCE § 305, at 763 (P. Herrick rev., 5th ed.1956) (footnote omitted); *see* 2 SPENC-

ER A. GARD, JONES ON EVIDENCE § 14:1, at 578 (6th ed. 1972) ("[W]itnesses who do not qualify as experts shall testify to facts without stating their impressions, conclusions or opinions.") (footnote omitted).

The parties have not cited, nor has our independent research found, any case decided by this Court which squarely embraced the sweeping proposition that opinion testimony was disfavored, and thus presumptively inadmissible,[10] although we have alluded to this general common law principle on numerous occasions. *See, e.g., Hughes v. Averza*, 223 Md. 12, 17, 161 A.2d 671, 675 (1960) ("[T]he witness should not have been asked about her opinion or impression but only concerning facts and circumstances of which she was competent to speak."); *Flickinger v. Wagner*, 46 Md. 580, 600 (1877) ("The answer ... would have been nothing more or less than the opinion of the witness, and therefore inadmissible."); *Law v. Scott*, 5 H. & J. 438, 458–59 (Md.1822) ("This is not [testimony] to facts only, resting in the immediate knowledge and recollection of the witness, but is a plain expression of his opinion ..., and we think ... wholly inadmissible."). Nonetheless, this Court has upheld the admission of lay opinion testimony with such frequency[11] that one commentator has

---

**10.** It is clear that traditionally under Maryland law, lay opinion testimony was inadmissible in certain circumstances: when only an expert could reach a rational conclusion due to the subject matter of the testimony, *Bruce v. State*, 328 Md. 594, 630, 616 A.2d 392, 410 (1992), *cert. denied*, 508 U.S. 963, 113 S.Ct. 2936, 124 L.Ed.2d 686 (1993); when the conclusion and the inferences relied upon by the witness were within the common knowledge of the trier of fact, *Hendrix v. State*, 200 Md. 380, 390, 90 A.2d 186, 190 (1952); and when the lay witness stated an opinion on a question of law. *Fleischmann v. Clark*, 137 Md. 171, 176, 111 A. 851, 853 (1920).

**11.** "Lay opinions which are rationally based and helpful to the trier of fact will be admissible." LYNN McLAIN, MARYLAND EVIDENCE § 701.1, at 192 (1987); *see id.* § 701.1, at 192–93 n. 3 (citing cases); *see also Baltimore & Liberty Turnp. Co. v. Cassell*, 66 Md. 419, 431, 7 A. 805, 806–07 (1887) ("[A]ny human being who has the use of his organs of vision, and is possessed of an intellect above the grade of idiocy can tell when a particular place in a road is dangerous or otherwise, and is therefore competent to testify as to its condition; the value of [this] testimony being for consideration of the jury.").

observed "[t]here are so many exceptions that the general rule seems to be swallowed by them." JOSEPH F. MURPHY, JR., MARYLAND EVIDENCE HANDBOOK § 603, at 328 (2nd ed.1993). Finally, our predecessors reasoned, on occasion, that certain opinions, by virtue of being testified to in court, can be transformed into facts. *See E.F. Enoch Co. v. Johnson,* 183 Md. 326, 329, 37 A.2d 901, 903 (1944) ("He stated he saw 'an automobile going east.' This was not a conclusion. . . . And if it be conceded that the answer contained conclusions, it, nevertheless, contained the quoted statement to which the witness testified as a fact."); *Livingston v. Safe Deposit & Trust Co.,* 157 Md. 492, 499–500, 146 A. 432, 435 (1929) ("Such a conclusion, while called an opinion, has been described as 'knowledge at shorthand,' and has more of the elements of direct than of opinion evidence. . . . [I]t is regarded as a fact.").

In analyzing the admissibility of lay opinion testimony, writing for this Court almost a century ago, Judge (later Chief Judge) Boyd made the cogent observation that "[i]t is some-times difficult to draw the line between what is and is not admissible from a non-expert, when his opinion is offered in evidence." [12] *Tucker v. State ex rel. Johnson,* 89 Md. 471, 477,

---

12. Such apparent inconsistencies fueled the ire of Professor Wigmore, who waged a campaign to eradicate the distinction between opinion testimony and testimony relating mere factual information. 7 WIGMORE, EVIDENCE §§ 1917–29, at 1–42 (Chadbourn rev.1978). Writing for this Court, Judge (later Chief Judge) Hammond reached a similar conclu-sion:

> In a remote and abstract sense, the answers embody opinions and conclusions but this is true to some extent of the most factual answer. The assumption that there is a difference in kind between 'fact' and 'opinion' has been said to be an illusion.

*Glaros v. State,* 223 Md. 272, 277, 164 A.2d 461, 464 (1960); *see Central R.R. Co. v. Monahan,* 11 F.2d 212, 214 (2nd Cir.1926) (L.Hand, J.) ("The line between opinion and fact is at best only one of degree. . . . "); 1 MCCORMICK ON EVIDENCE § 11, at 42 (J. Strong ed., 4th ed. 1992) ("There is no conceivable statement however specific, detailed and 'factual,' that is not in some measure the product of inference and reflection as well as observation and memory."); *see also* WIGMORE, *supra,* § 1929, at 38–39 ("[T]he opinion rule will in substance disap-pear. . . . It has done more than any one rule of procedure to reduce

43 A. 778, 780 (1899). We need not enter this legal labyrinth, however, because the admissibility of lay opinion testimony is now governed by Maryland Rule 5–701:

> If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

Md. Rule 5–701. Except for minor stylistic changes, this rule is identical to Federal Rule of Evidence 701, and reflects the modern trend away from the traditional common law tenet that a lay witness may not express an opinion. MCCORMICK, *supra*, § 11, at 43–44.

■ This retreat from the common law rule of inadmissibility of lay opinion testimony has led several courts and commentators to conclude that, although the burden of proof as to admissibility is on the proponent of evidence, the "modern trend favors admissibility of opinion testimony." *Virgin Islands v. Knight*, 989 F.2d 619, 630 (3rd Cir.) (quotation marks and citations omitted), *cert. denied*, 510 U.S. 994, 114 S.Ct. 556, 126 L.Ed.2d 457 (1993); *see MCI Telecommunications Corp. v. Wanzer*, 897 F.2d 703, 706 (4th Cir.1990) (quoting *Teen–Ed, Inc. v. Kimball International, Inc.*, 620 F.2d 399, 403 (3rd Cir.1980); citing 3 JACK B. WEINSTEIN, EVIDENCE § 701[02], at 701–9 & 701–17 (1978)); MCCORMICK, *supra*, § 11, at 44–45. A trial court should, within the sound exercise of its discretion, admit lay opinion testimony if such testimony is derived from first-hand knowledge; is rationally connected to the underlying facts; is helpful to the trier of fact; and is not barred by any other rule of evidence. *See Bruce v. State*, 328 Md. 594, 630, 616 A.2d 392, 410 (1992), *cert. denied*, 508 U.S. 963, 113 S.Ct. 2936, 124 L.Ed.2d 686 (1993); *Stebbing v. State*, 299 Md. 331, 350–51, 473 A.2d 903, 912, *cert. denied*, 469 U.S. 900, 105 S.Ct. 276, 83 L.Ed.2d 212 (1984); *see also*

---

our litigation towards a state of legalized gambling.") (footnotes omitted).

*United States v. Carlock,* 806 F.2d 535, 551 (5th Cir.1986), *cert. denied,* 480 U.S. 949, 107 S.Ct. 1611, 94 L.Ed.2d 796 (1987).

 "[L]ay opinions which are helpful to the trier of fact in that they have incremental probative value beyond that of the underlying facts will be permitted." [13] LYNN McLAIN, MARYLAND EVIDENCE § 701.1, at 198 (1987). Such testimony generally falls into one of two categories. EDWARD J. IMWINK-ELRIED, EVIDENTIARY FOUNDATIONS 241 (3rd ed.1995). The first category is lay opinion testimony where it is impossible, difficult, or inefficient to verbalize or communicate the under-lying data observed by the witness. This Court long ago recognized the principle that relevant lay opinion testimony should be admitted in such circumstances, explaining that:

> There are ... cases where all the facts cannot be detailed to the jury, which are necessary for a proper understanding of the subject. In speaking of a precipice, or of the condition of a road which is ... dangerous for travel, or of numbers, weights, heights, distances, and other like subjects, it would rarely be practicable for a witness to give the jury a satisfactory idea of the things described, without stating his opinion of them.

*Baltimore & Yorktown T. Rd. v. Leonhardt,* 66 Md. 70, 78, 5 A. 346, 351 (1886). In other words, where the facts cannot otherwise be adequately presented or described to the jury, lay opinion testimony should be admitted. *United States v. Yazzie,* 976 F.2d 1252, 1255 (9th Cir.1992) (quoting *United States v. Skeet,* 665 F.2d 983, 985 (9th Cir.1982)). For in-stance, in *State v. Jones,* 311 Md. 23, 532 A.2d 169 (1987), we upheld the admission of a lay opinion that an automobile was "trying to catch up with" a police car. *Id.* at 32–33, 532 A.2d at 173–74. Because it would have been difficult or impossible

---

**13.** The requirement that lay opinion testimony must have incremental probative value beyond that of the underlying facts to be admissible is consonant with the common law rule that such testimony will not be admitted if: only an expert could reach a rational conclusion due to the subject matter of the testimony; if the conclusion and the inferences relied upon by the witness are within the common knowledge of the trier of fact; or if the lay witness states an opinion on a question of law. *See supra,* note 10.

for the witness in that case to fully convey this impression to the jury merely by reciting the underlying facts observed by that witness, the opinion was properly admitted.

The second broad category of lay opinion testimony is where "the lay trier of fact lacks the knowledge or skill to draw the proper inferences from the underlying data." IM-WINKELRIED, *supra,* at 241. With this category of lay opinion testimony, to determine admissibility, the trial court properly focuses on the relative knowledge and experience of the witness versus the trier of fact. As an example, in *Scott v. Hampshire, Inc.,* 246 Md. 171, 227 A.2d 751 (1967), we allowed a former naval construction worker to offer a lay opinion as to the relative degree of safety connected with different methods of operating a crane. *Id.* at 176–77, 227 A.2d at 754. Although the plaintiff in *Scott* was not qualified as an expert, we concluded that his prior experiences and observations in the operation of cranes qualified him to offer lay opinion testimony in that case. *See also Ager v. Baltimore Transit Co.,* 213 Md. 414, 419–20, 132 A.2d 469, 472 (1957) (allowing an experienced ambulance attendant to offer lay opinion testimony that an accident victim was "feigning" injury).

Maryland courts have recognized that the specialized training, experience, and professional acumen of law enforcement officials often justify permitting a police officer to offer testimony in the form of lay opinion. *See, e.g., Ricks v. State,* 312 Md. 11, 31–32, 537 A.2d 612, 621–22, *cert. denied,* 488 U.S. 832, 109 S.Ct. 90, 102 L.Ed.2d 66 (1988). To restrict such testimony to underlying factual observations would often deprive the trier of fact of the necessary benefit of the percipient mind's prior experiences. In those circumstances, these prior experiences would be a *sine qua non* to a full understanding of the underlying factual data. *See Tu v. State,* 97 Md.App. 486, 501, 631 A.2d 110, 117 (1993), *aff'd on other grounds,* 336 Md. 406, 648 A.2d 993 (1994).

### B.

■ In this case, Troopers Harrison and Karwacki did not simply offer opinion testimony that the disputed substance

*looked like* crack cocaine. Rather, the troopers expressed the opinion that, based on their training and experience, the alleged contraband *was in fact* crack cocaine. The determination of whether specific evidence is relevant in a given case rests with the trial court, and that determination will not be disturbed on appeal absent a clear abuse of discretion. *Merzbacher v. State*, 346 Md. 391, 404–05, 697 A.2d 432, 439 (1997); *State v. Allewalt*, 308 Md. 89, 101, 517 A.2d 741, 747 (1986). As previously discussed, for lay opinion testimony to be admissible in the first instance, it must be derived from first-hand knowledge, rationally connected to the underlying facts, and helpful to the trier of fact. *See supra*, part III. A. Because we conclude that the lay opinion testimony of Troopers Harrison and Karwacki satisfied none of these threshold requirements, the trial court abused its discretion in admitting that testimony. We discuss each deficiency in turn.

### *Personal Knowledge*

The first-hand or personal knowledge prerequisite of Maryland Rule 5–701 derives from the rule's requirement that lay opinion testimony be based upon "the perception of the witness." [14] Md. Rule 5–701. Yet the act of perceiving, by itself, does not satisfy this requirement: "Even if a witness has perceived a matter with his senses, the second component of personal knowledge requires that he has the experience necessary to comprehend his perceptions." 29 CHARLES A. WRIGHT & VICTOR J. GOLD, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 6254, at 133 (1997) (footnote omitted). Thus, "where the lay witness observes matters that can be comprehended only with specialized experience, it may be necessary to demonstrate that the witness has such experience." *Id.;*

---

14. This requirement is in accord with Maryland Rule 5–602:

 **Rule 5–602. Lack of Personal Knowledge**
 Except as otherwise provided by Rule 5–703, a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness's own testimony.

*see* LYNN McLAIN, MARYLAND EVIDENCE § 701.1, at 195–96 (1987); 1 McCORMICK ON EVIDENCE § 12, at 46 n. 22 (J. Strong ed., 4th ed. 1992) ("[W]here relevancy requires, a foundation must be laid as to the witness' personal knowledge of facts to which the observed facts are being compared.").

In the present case, the record demonstrates that the trial court would have been justified in concluding that Troopers Harrison and Karwacki had the training and experience to offer opinion testimony as to the visual appearance of crack cocaine. *See State v. Schofill,* 63 Haw. 77, 621 P.2d 364, 369–70 (1980) (noting that a police officer not able to render an opinion that a "substance was in fact cocaine," still possessed the expertise "to state that the substance 'appeared to be cocaine' "). Yet neither trooper limited his testimony to identifying the visual characteristics of the disputed substance. Rather, both Harrison and Karwacki testified to the chemical nature of the alleged contraband. In response to the question, "Do you have an opinion as to what the substance was?," Trooper Harrison stated, "Crack cocaine"; and Trooper Karwacki answered, "That it was, in fact, crack cocaine." In stark contrast to their relative abilities to perceive the *visual characteristics* of suspected crack cocaine, the record does not demonstrate that either Trooper Harrison or Trooper Karwacki had the training and experience necessary to accurately identify the *chemical nature* of that substance.[15] Yet that is precisely what their testimony purported to do.

A case decided by our predecessors over a half century ago, *Smith v. State,* 182 Md. 176, 32 A.2d 863 (1943), foreshadowed

---

**15.** Although the trial judge must be satisfied that lay opinion testimony is based upon first-hand knowledge, once this threshold requirement has been met, the witness need not testify in advance to all the facts leading to his or her conclusion:

> [T]here is no principle and no orthodox practice which requires a witness having personal observation to state in advance his observed data before he states his inferences from them; all that needs to appear in advance is that he had an *opportunity to observe* and *did observe,* whereupon it is proper for him to state his conclusions, leaving the detailed grounds to be drawn out on cross-examination.

WIGMORE, *supra,* § 1922, at 27 (internal citation and footnote omitted).

the result we reach today. In *Smith,* the defendant challenged the testimony of a lay witness who stated that a mattress was covered with spots of what the witness believed to be blood. *Id.* at 185, 32 A.2d at 866. In rejecting Smith's exception, the Court cited the general rule that " 'non-experts have always been permitted to state their conclusions from the facts observed, [ ] that certain stains on clothing or other substances looked like or resembled blood stains, and to describe them by color or appearance.' " *Id.* at 185–86, 32 A.2d at 867 (quoting 2 WHARTON'S CRIMINAL EVIDENCE § 997 (11th ed.1935)). The Court indicated, however, that such opinion testimony was only admissible because "the evidence objected to as evidence of blood [was] from the laymen's point of view in appearance, and not from a scientific demonstration that it was blood." *Id.* at 186, 32 A.2d at 867. The implication of *Smith* is that a lay witness may offer testimony as to the visual identity of a substance, but may not conclusively identify the chemical composition of the substance absent a showing that the witness possesses the training and experience necessary to accurately identify the chemical nature of that substance. *See Symington v. Graham,* 165 Md. 441, 446–47, 169 A. 316, 318–19 (1933) (concluding that a woman who had experienced eight normal pregnancies was properly qualified to characterize the pain undergone during a ninth pregnancy as abnormal, but, absent medical training, unqualified to identify the cause of that abnormality); *see also* McCORMICK, *supra,* § 12, at 46 n. 22 ("Thus, a witness may not testify that something smelled like dynamite unless it is sufficiently established that the witness from prior experience knows what dynamite smells like.").

 Maryland law requires a witness to have personal knowledge " 'sufficient to form a basis for the formation of rational opinion.' " *Ingalls v. Trustees of Mt. Oak Methodist Church,* 244 Md. 243, 258, 223 A.2d 778, 785 (1966) (quoting *Doyle v. Rody,* 180 Md. 471, 481, 25 A.2d 457, 462 (1942)); *see also Wyatt v. Johnson,* 103 Md.App. 250, 268, 653 A.2d 496, 505 (1995). We agree with the observation of Robinson's counsel at oral argument that the State could not introduce

the testimony of a qualified chemist as to the chemical composition of a substance unless such an opinion was based upon the scientific evidence necessary to support that opinion. Hence, it follows *a fortiori*, that a lay witness may not offer such an unsupported opinion based solely on visual observation. *See Lazard v. Merchants & Min. Transp. Co.*, 78 Md. 1, 20–21, 26 A. 897, 900 (1893) (upholding the trial court's refusal to allow a witness to express an opinion not "based upon knowledge"), *appeal dismissed*, 17 S.Ct. 995, 41 L.Ed. 1178 (1897); *see also Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 424 (5th Cir.1987) ("As an unsupported opinion, it does not serve the purposes for which it is offered, that is, objectively to assist the jury in arriving at its verdict.").

### *Rational Connection*

 The lay opinion testimony offered by Troopers Harrison and Karwacki was also inadmissible because of an insufficient rational connection between what the troopers actually perceived and the ultimate opinions they expressed at trial. Rule 5–701 requires that lay opinion testimony be "rationally based." This precondition to admissibility contemplates that there must "be a rational connection between th[e] perception and the opinion." WRIGHT & GOLD, *supra*, § 6254, at 135 (footnote omitted); *see Smith v. Biggs*, 171 Md. 528, 534, 189 A. 256, 259 (1937) (noting that not only must a witness have personal knowledge regarding that witness's testimony, but that knowledge "must be sufficient to form a relevant and testimonial basis for the expression . . . of an opinion"). Thus, "speculation and conjecture will be excluded as irrationally based." *Reporter's Note*, THE MARYLAND RULES OF EVIDENCE § 5–701–2 (H. Chasanow ed.1994); LYNN McLAIN, MARYLAND RULES OF EVIDENCE § 2.701.4, at 187 (1994). For lay testimony to be relevant, and thus admissible, "the logical connection between the evidence and the fact it is offered to prove must be supplied by a proposition of knowledge." WRIGHT & GOLD, *supra*, § 6254, at 137 (footnote omitted); *see Turpin v. Merrell Dow Pharmaceuticals, Inc.*, 959 F.2d 1349,

1359 (6th Cir.) (noting a factual or theoretical basis for opinion testimony is a necessary predicate to admissibility); *cert. denied,* 506 U.S. 826, 113 S.Ct. 84, 121 L.Ed.2d 47 (1992); *Calhoun v. Honda Motor Co., Ltd.,* 738 F.2d 126, 131–32 (6th Cir.1984) (same). Thus, the proper question for determining if a sufficiently rational nexus exists between actual perception and the subsequent lay opinion testimony based on that perception is the validity of the proposition the witness used to link perception to opinion. *See* WRIGHT & GOLD, *supra,* § 6254, at 138.

In this case, based on their training and experience, the troopers drew the common sense inference that the substance swallowed by Robinson looked like crack cocaine. The troopers further concluded that the substance was, in fact, crack cocaine. To testify to those conclusions in court, however, those opinions must have been both rational and reasonably certain. The conclusion that the substance seized from Robinson was in fact cocaine fails to meet this threshold requirement because the visual characteristics of crack cocaine are not unique to that substance alone. The relative abundance of counterfeit substances intended to visually resemble controlled substances is so great, that the General Assembly has made it a criminal act to possess, with the intent to distribute, "any non-controlled substance intended by that person for use or distribution as a controlled dangerous substance." Art. 27, § 286B(c). For instance, as the legislative history to Article 27, § 286B indicates:

> The production and distribution of substances such as caffeine, phenylpropanolamine, ephedrine sulfate, and pseudoephedrine in an oral dosage form which is substantially identical to various legally manufactured controlled dangerous substances, has become an extremely serious problem....

Memorandum from the Maryland Dept. of Health & Mental Hygiene to Judiciary Comm., Maryland House of Delegates, at 1 (undated) (available at the Dept. of Legislative Reference,

Bill File for House Bill 622 (1981)).[16] Thus, as reflected by the legislative history of § 286B, the proliferation of counterfeit or look-alike substances is so substantial as to render the identification of suspected cocaine through sight alone a tenuous proposition at best. *See People v. Jones,* 174 Ill.2d 427, 221 Ill.Dec. 192, 194, 675 N.E.2d 99, 101 (1996) ("Whether the untested packets in the instant case may have contained cocaine or mere look-alike substances is pure conjecture."); *see also State v. Robinson,* 517 N.W.2d 336, 338 (Minn.1994).

Moreover, there has been no suggestion that crack cocaine is not subject to counterfeit imitation in the same manner as other illegal substances. To the contrary, the record reflects that any number of substances can adequately mimic crack cocaine.[17] *See In re Timothy F.,* 343 Md. 371, 374–75, 681 A.2d 501, 503 (1996) (detailing in that case how possession of "dried milk chips" led to a charge of possession of a noncontrolled substance with the intent to distribute it as a controlled substance). Although the circumstances of this case might support the inference that the substance visually identified by Troopers Harrison and Karwacki was a controlled substance, the facts also fairly and substantially support the contradictory inference that the alleged contraband was a counterfeit noncontrolled substance. Hence, the proposition that crack cocaine can be identified by sight alone with reasonable certainty by a lay witness is logically unsound.[18] Accordingly, the

---

**16.** The bill file of Article 27, § 286B contains ten letters from different law enforcement or governmental organizations urging the passage of the law because, in the words of one letter, "the production and distribution of substances which look like controlled substances (drugs) has become a serious problem in Maryland communities and its continued existence is a present and real threat to ... young people." Letter from Maryland Assoc. of Bds. of Ed. to Judicial Proceedings Comm., Maryland State Senate, at 1 (Feb. 24, 1981) (available at the Dept. of Legislative Reference, Bill File for House Bill 622 (1981)).

**17.** As the testimony of Troopers Harrison and Karwacki pointed out, substances used to manufacture counterfeit crack cocaine include soap, sugar, wax, and baking soda.

**18.** As Trooper Harrison conceded on cross-examination, "you need an analysis to get rid of ... all reasonable doubt as to what the substance

trial court should not have admitted the lay opinion testimony of Troopers Harrison and Karwacki. *State v. Conn,* 286 Md. 406, 428, 408 A.2d 700, 710 (1979) ("[T]he statement by the lay nonexpert witness becomes trustworthy and thus admissible only after he demonstrates a sufficient foundation for the inference drawn.").

### *Helpful to the Trier of Fact*

The third threshold requirement for admissibility is a determination by the trial court that a lay opinion will be helpful to the trier of fact in resolving a fact at issue in the case. Md. Rule 5–701. "Ultimately, the question is whether the witness's perception was sufficient under all the circumstances to warrant the conclusion his opinion will be helpful." WRIGHT & GOLD, *supra,* § 6254, at 144 (footnote omitted).

When lay opinion testimony is offered without sufficient factual support, "the jury may be lulled by a convincing witness into accepting a flawed or unfounded opinion." WRIGHT & GOLD, *supra,* § 6255, at 153 (footnote omitted). Wigmore also recognized the danger of the trier of fact "attribut[ing] greater evidential value to the evidence than is warranted." 1 WIGMORE, EVIDENCE § 10a, at 684 (Tillers rev.1983). This danger is especially prevalent in a case such as this, where the lay opinion testimony is offered by a police officer. Thus, in the first instance, lay opinion testimony will not be helpful if the opinion as offered deprives the trier of fact of information necessary to resolve the fact at issue. In other words, a lay opinion is not reliable if that opinion is "incomplete in a critical area." *Viterbo,* 826 F.2d at 423; *see Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1175 (3rd Cir.1993) ("An opinion based on false assumptions is unhelpful in aiding the jury in its search for the truth, and is likely to

is." While we do not agree with Trooper Harrison's observation that the results of a chemical analysis must be introduced to prove the identity of a controlled substance beyond a reasonable doubt, *see supra,* part II, it is significant that even Trooper Harrison believed his visual identification was insufficient in this case to establish the identity of the alleged contraband beyond a reasonable doubt.

mislead and confuse.") (quotation marks and citation omitted). In the present case, for example, Troopers Harrison and Karwacki did not offer the court in the first instance a factual predicate for distinguishing between crack cocaine and a counterfeit substance similar in appearance.

 In the context of expert testimony, this Court has repeatedly held that such a witness must base his or her "opinion on probability and not on mere possibility." *Kujawa v. Baltimore Transit Co.*, 224 Md. 195, 203–04, 167 A.2d 96, 99 (1961). This limitation applies with equal force to the trial court's determination of whether lay opinion testimony is admissible in the first instance. *See Neusbaum v. State,* 156 Md. 149, 163, 143 A. 872, 878 (1928); McLain, Maryland Evidence, *supra,* § 701.1, at 194; *accord Asplundh Mfg. Div. v. Benton Harbor Eng'g,* 57 F.3d 1190, 1201 (3rd Cir.1995); *United States v. Cortez,* 935 F.2d 135, 139 (8th Cir.1991), *cert. denied,* 502 U.S. 1062, 112 S.Ct. 945, 117 L.Ed.2d 114 (1992); *United States v. Hoffner,* 777 F.2d 1423, 1426 (10th Cir.1985). Thus, it follows that a speculative opinion will not be helpful to the trier of fact. *See Asplundh,* 57 F.3d at 1201 ("[I]n order to be 'helpful,' an opinion must be reasonably reliable."); *E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 557 (Tex.1995) ("Unreliable evidence is of no assistance to the trier of fact. . . .").

 In their testimony at Robinson's trial, Troopers Harrison and Karwacki both testified with certainty that the substance seized from the defendant was in fact crack cocaine. The troopers made an assumption, based on their relative experience, that the substance seized was crack cocaine. This assumption, "although possessing a certain common sense appeal," was too conjectural to establish the chemical composition of the alleged contraband with substantial certainty. *See Calhoun,* 738 F.2d at 131–33 (rejecting testimony when the witness's "assumption . . . is not supported by the type of evidence necessary to reach th[e] conclusion"). Accordingly, the troopers' lay opinion testimony in this case was not helpful to the jury, and should not have been admitted.

IV.

In sum, to satisfy its burden of proof, the State must offer sufficient, admissible evidence for every element of the crime. Proof beyond a reasonable doubt requires more than conclusory speculation. In this instance, the trial court abused its discretion by admitting the lay opinion testimony of Troopers Harrison and Karwacki.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART, AND REVERSED IN PART. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE JUDGMENT FOR POSSESSION OF A CONTROLLED SUBSTANCE, AND TO AFFIRM THE JUDGMENT ON THE REMAINING COUNTS. REMAND TO THE CIRCUIT COURT FOR ST. MARY'S COUNTY FOR RESENTENCING. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY ST. MARY'S COUNTY.*